UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMY HAWK, individually and
as Personal Representative
of THE ESTATE OF DOUGLAS
HAWK,

        Plaintiff,

v.                              Case No: 2:24-cv-823-JES-NPM

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

        Defendant.

_____

**OPINION AND ORDER**

This matter comes before Court on the Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Doc. #18) filed by Defendant Hartford Insurance Company of the Midwest ("Hartford") against the operative Complaint (Doc. #1.) Plaintiff Amy Hawk (Plaintiff or "Hawk")[1] filed a Response in Opposition (Doc. #24.)

This is a contract dispute between a homeowner/insured, Hawk, and an insurance company, Hartford, which issued a federal flood insurance policy covering her residence. The residence was damaged by flooding during Hurricane Ian, and Hartford paid an amount less than the full coverage available under the policy. Hawk eventually sued Hartford for additional payments. Hartford seeks to dismiss

_____

[1] The Court recognizes that Amy Hawk appears in two capacities, but will refer to her in the singular for present purposes.

the case, arguing that Hawk filed suit too late. Hartford contends that the case's untimeliness strips the Court of subject-matter jurisdiction and precludes Hawk from stating a claim upon which relief may be granted. Hawk disagrees with both positions.

For the reasons set forth below, the motion is **GRANTED** as to its 12(b)(6) grounds, and the case is dismissed without prejudice. Plaintiff's request to file an amended complaint is **GRANTED**. The remainder of the motion to dismiss, on 12(b)(1) grounds, is **DENIED** at this time, but of course, subject-matter jurisdiction always remains a live issue while a case is pending.

**I.**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action if a court lacks subject-matter jurisdiction. Hartford makes a factual attack on jurisdiction, which means that the Court may look outside the allegations in Hawk's Complaint and consider materials extrinsic to the pleadings, such as affidavits or testimony. Efron v. Candelario, 110 F.4th 1229, 1234 n.5 (11th Cir. 2024).

A Rule 12(b)(6) motion to dismiss, on the other hand, is normally more restrictive on what a court may consider. In deciding whether a complaint states a claim upon which relief may be granted,[2] a district court considers the factual allegations in

_____

[2] Plaintiff's Response incorrectly states that Rule 12(b)(6) requires showing "that no relief could be granted under any set of

the complaint and exhibits attached to the complaint or incorporated into the complaint by reference. MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co., 40 F.4th 1295, 1303 (11th Cir. 2022) (citation omitted); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). A court may also consider evidence outside the complaint if the evidence satisfies the incorporation-by-reference doctrine or is properly subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Swinford v. Santos, 121 F.4th 179, 187-88 (11th Cir. 2024).

Under the former doctrine, extrinsic material referenced in a complaint and attached to a motion to dismiss may be considered if (1) it is central to the plaintiff's claim and (2) its authenticity is unchallenged. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Jackson v. City of Atlanta, Georgia, 97 F.4th 1343, 1350 (11th Cir. 2024). However, when the latter two prongs are met, extrinsic materials may be considered even if not mentioned in, nor attached to, a complaint. Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); Julmist v. Prime Ins. Co., 92 F.4th 1008, 1016 (11th Cir. 2024)

---

facts that could be proved consistent with the allegations." (Doc. #24, p. 5.) While that was once the standard, it is no longer so. "Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. And factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." M.H. v. Omegle.com LLC, 122 F.4th 1266, 1275-76 (11th Cir. 2024) (internal punctuation and citations omitted).

(affirming a district court's consideration of an insurance policy that an insurer attached to a motion to dismiss).

In this case, there is no material difference in what the Court may consider under Rule 12(b)(1) or Rule 12(b)(6). Both parties essentially rely on the same set of extrinsic materials and do not dispute the authenticity or accuracy of any document. Given the intertwined issues and facts, the Court may decide the jurisdictional and the substantive aspects of the motion together. See, e.g., Brownback v. King, 592 U.S. 209, 217 (2021).

## II.

Plaintiff's single-family primary residence in Sanibel, Florida was insured by Policy No. 8705080078 (the "Policy"), a Standard Flood Insurance Policy ("SFIP") issued by Hartford. (Doc. #1-1, p. 2; Doc. #24-1.) Hartford is a Write-Your-Own ("WYO") insurance carrier, and issued the Policy pursuant to the National Flood Insurance Program ("NFIP"). (Doc. #1, ¶ 8.) The Federal Emergency Management Agency ("FEMA") administers the NFIP pursuant to the National Flood Insurance Act ("NFIA"). (Id. at ¶ 1.)[3]

---

[3] Congress enacted the NFIA in 1968 to provide affordable flood insurance in areas where it is uneconomical for the private market to do so. Fla. Key Deer v. Paulison, 522 F.3d 1133, 1136 (11th Cir. 2008). The NFIA authorizes FEMA to establish and administer the NFIP. Id. FEMA uses WYO companies like Hartford to assist in the issuance and administration of SFIPs. Newton v. Capital Assur. Co., 245 F.3d 1306, 1308 (11th Cir. 2001). As "fiscal agents" of the United States, WYO companies must strictly adhere to SFIP requirements and adjust claims in accordance with NFIP guidelines. Id. at 1311–12. Also, "the insured must adhere strictly to the

Under the Policy, Hartford/FEMA agreed to pay Hawk "for direct physical loss by or from flood to your insured property" under certain conditions, one of which was that Hawk "[c]omply with all terms and conditions" of the Policy. (Doc. #1-1, p. 5.) The Policy provided building coverage (Coverage A) of $250,000 (with a $5,000 deductible) and contents coverage (Coverage C) of $50,000 (with a $2,000 deductible). (Id. at 2.)

On September 28, 2022, Hawk's residence was damaged by flooding from Hurricane Ian. (Doc. #1, ¶ 12; Doc. #24, ¶ 3.) The Policy required Hawk to give Hartford "prompt written notice" of a flood loss to the insured property. (Doc. #1-1, p. 22.) Although the record does not establish a date or the details, the Complaint asserts that Hawk "timely reported the[] claim to Defendant in accordance with the Insurance Contract." (Doc. #1, ¶ 13.) This factual assertion has not been contested by Hartford.

*Ian Memorandum.* On October 6, 2022, FEMA's Acting Assistant Administrator issued a Memorandum (the "Ian Memorandum") (Doc. #1-2; Doc. #24-2) announcing temporary changes to the claims process for Hurricane Ian claims.

- Normally, before receiving a claim payment, an SFIP policyholder must first submit a signed proof of loss; alternatively, at the insurer's option, the insurer may accept a signed adjuster's report instead of a signed proof

---

requirements of the [SFIP] before any monetary claim can be awarded against the government." Sanz v. U.S. Security Inc., Co., 328 F.3d 1314, 1318 (11th Cir. 2003).

of loss.  The Ian Memorandum provided that NFIP insurers "must" exercise the option to accept their adjuster's report to evaluate and pay a claim instead of requiring a signed proof of loss.  The requirement that a policyholder must sign the adjuster's report was also "conditionally waive[d]."  (Doc. #24-2, p. 1 & n.1.)

- To issue payments under the conditional waiver, insurers had to provide policyholders with a copy of the adjuster's report supporting the claim payment, a written explanation if the payment was less than the adjuster's report, and an Adjuster Report Claim Payment ("ARCP") Letter of certain form and substance.  (<u>Id.</u> at 1.)

- The ARCP Letter needed to include the amounts that the adjuster had determined the insured was owed for building and contents coverage, a breakdown of the covered flood claim, and a statement that the insurer had exercised its option to accept the adjuster's report instead of a signed proof of loss.  (<u>Id.</u> at 3.)

- The ARCP Letter also had to state:

  Accepting this payment does not waive any of your rights to seek further payments under your flood insurance policy. If you find additional flood damage that was not included in the adjuster's estimate or if the cost to repair the flood damage exceeds the adjuster's estimate, you may request an additional payment in accordance with the terms and conditions of the [SFIP].  (<u>Id.</u>)

- NFIP insurers were allowed to make more than one payment on a claim using this conditional waiver, which was effective through the expiration of the applicable deadline to submit a proof of loss.  (<u>Id.</u> at 1.)

- Policyholders were allowed to submit a signed proof of loss with supporting documents when they disagreed with the adjuster's report.  (<u>Id.</u> at 2.)

- "To allow enough time for policyholders to evaluate their losses and the adjusters' reports," the standard 60-day proof-of-loss filing deadline for Hurricane Ian claims was extended to 365 calendar days from the date of loss.  (<u>Id.</u>)

Hartford assigned an insurance adjuster to inspect the Hawk residence. (Doc. #1, ¶ 17.) The adjuster prepared an estimate of the damage, which was submitted to both parties, and that Hartford used to evaluate and pay the claim.

**_Notice._** On January 27, 2023, Hartford emailed Hawk a Notice with the subject line "Closed Claim Status." (Doc. #18-2, p. 1.) The Notice updated the status of Hawk's claim, stating that Hartford had issued and mailed two checks ($156,458.22 and $50,000.00) as payment for Hawk's claim. (Id.)

**_January 26, 2023, Letter._** Appended to the Notice was a letter dated January 26, 2023 (the "1.26.23 Letter"). (Id. at 2-3.) There, Hartford stated, "[w]e have exercised our option to accept your adjuster's report of your flood loss instead of a signed proof of loss to evaluate and pay your claim." (Id. at 2.) Hartford then explained that it had determined that Hawk was only owed $156,458.22 in building coverage (Coverage A) and $50,000 in contents coverage (Coverage C), or $206,458.22 of the $300,000 in total coverage available under the Policy. (Id.) The letter further stated, "[y]our adjuster should have provided a copy of the damage estimate that supports this payment. Please carefully review the report and contact your adjuster to discuss any questions. If you did not receive this estimate, please contact your adjuster or our office and a copy will be provided." (Id.)

The letter also informed Hawk that the adjuster had reported

damage to landscaping, but that Hartford had rejected that portion
of the claim.  (Doc. #18-2, p. 2.)  Hartford explained that "land
is not covered . . . so your claim for payment to repair or replace
your landscaping **is denied**."  (Id.) (emphasis added).  Hartford
cited the following Policy language to justify the denial:

> IV. PROPERTY <u>**NOT INSURED**</u>
> We <u>**do not insure**</u> any of the following:
> 1. Personal property not inside a building.

(<u>Id.</u>)(emphasis added.)

The letter also stated, as required by the Ian Memorandum,
that by accepting payment Hawk was not waiving any of her rights
to seek "further payments" under the Policy.  (<u>Id.</u>)  The letter
explained that Hawk could request "an additional payment in
accordance with the terms and conditions of the [SFIP]" if (1) she
discovered "additional flood damage that was not included in the
adjuster's estimate," or (2) "the cost to repair the flood damage
exceeds the adjuster's estimate."  (<u>Id.</u> at 2-3.)

*Policyholder Rights Form.*  Appended to the Notice and the
1.26.23 Letter was a form entitled "Policyholder Rights" which
notified Hawk of her options following Hartford's partial denial
of her claim.  (<u>Id.</u> at 4.)  The options included the ability to
administratively appeal the decision or "to file suit . . . <u>**within
one year**</u> of when your insurer <u>**first denied**</u> all <u>**or part**</u> of your
claim."  (<u>Id.</u>) (emphasis added).

*August 25, 2023, Amended Proof of Loss.*  On August 25, 2023,

Hawk signed an Amended Proof of Loss.  (Doc. #1-3, p. 2.)  The amended proof of loss, which included supporting documents, sought $235,000 in building coverage and $44,000 in contents coverage, for a total of $279,000.  (Id.)  Based on the amended proof of loss, Hawk asserted that flooding had damaged the residence in an amount and scope greater than the adjuster's estimate (Doc. #1, ¶ 20), and that numerous covered items were omitted or underpaid. (Id. at ¶ 21.)

*September 12, 2023, Request for Supplemental Payment.* Stellar Public Adjusting Services ("SPAS") informed Hartford in a September 12, 2023, letter that it represented Hawk and was making a formal request for a supplemental payment of $151,642.66 for Coverage A (Dwelling) loss.  (Doc. #24-4, pp. 3-4)  Attached to the Request were supporting documents, including the signed amended proof of loss.  (Id. at 1-2.)

*May 29, 2024, Letter.*  In a letter dated May 29, 2024 (the "1.29.24 Letter"), Hartford stated, "[w]e uphold our previous denials as stated in the denial letter sent to you dated January 26, 2023."  (Doc. #18-3, p. 1.)  Hartford explained that after reviewing SPAS's Request and supporting documents, it "found no missing insured items and no documentation of incurred costs." (Id.)  Hartford also stated, "[w]e received a signed proof of loss on September 25, 2023, in the amount of $279,000.  We reject [it]." (Id.)  It also discussed a Storm One Claims Report submitted with

the amended proof of loss, and explained that the items identified in the Report were not covered by the Policy for various reasons. (Id. at 2.)

*June 21, 2024, Letter.* Hawk later submitted additional documentation to Hartford through SPAS. In a letter dated June 21, 2024 (the "6.21.24 Letter"), Hartford responded, "[w]e uphold our previous denials as stated in the denial letter sent to you dated January 26, 2023[4] and May 29, 2024," and again denied coverage for the additional invoices. (Doc. #18-4, p. 1.)

### III.

On September 11, 2024[5], Hawk filed a one count breach-of-insurance-contract claim against Hartford. (Doc. #1, pp. 5-6.) Hawk asserts that the adjuster's estimate failed to comply with the Policy's provisions, Hartford's own claims handling standards, and the NFIP Claims Manual. (Id. at ¶ 18.) Hawk also alleges that Hartford breached the Policy by failing to adjust her claim promptly and fairly, to reach agreement on the amount of covered damages, and to pay the full amount she was owed. (Id. at ¶ 29.)

Hartford moves to dismiss the sole breach of contract count under Rule 12(b)(1) for lack of subject-matter jurisdiction and

---

[4] The letter actually says "January 26, 2024" but this is an apparent typographical error.

[5] Plaintiff's Response states that the Complaint was filed on September 25 and September 19, 2024. (Doc. #24, p. 5, 17.) September 11, 2024, is the correct date.

under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Both rely on the same argument: Hawk's lawsuit was not filed within one year of Hartford's partial denial of her claim on January 26, 2023, and is therefore barred by the applicable statute of limitations.

**A.**

The applicable statute of limitations provides:

> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and **upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim** in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072 (emphasis added). A similar one-year limitation period appears in Part VII.O of the Policy: "**If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim.**" (Doc. #1-1, p. 26) (emphasis in original).

As Hawk states, the only substantive issue presented "is when the one-year statute of limitations period imposed by 42 U.S.C. § 4072 began to run." (Doc. #24, p. 14.) Hartford maintains that

the statute of limitations was triggered by the 1.26.23 Letter's partial denial of Hawk's claim, and therefore, that this September 11, 2024, lawsuit was untimely.  (Doc. #18, pp. 8-11.)  Hawk responds that the 1.26.23 Letter did not trigger the one-year limitations period; rather, it was triggered by the 5.29.24 Letter. Therefore, Hawk argues, her September 11, 2024, lawsuit was timely. (Doc. #24, pp. 6-7, 17-18.)

Hawk's argument (id. at 8-18) goes like this: There could be no breach-of-contract action until Hawk requested something under the Policy and Hartford refused that request.  Insurance carriers like Hartford typically require insureds like Hawk to submit a sworn proof of loss within 60 days of the loss, and thereafter make their determinations concerning coverage and payment based on the proof of loss.  In the typical situation, the date of the mailing of a notice of complete or "partial" disallowance of the claim "does . . . trigger the one year limitations period imposed by 42 U.S.C.A. § 4072."  (Id. at 12.)

But the 1.26.23 Letter, Hawk continues, did not trigger the one-year period because she had not yet submitted a proof of loss making any request of Hartford.  Hawk notes that the letter stated that she could request additional payment in accordance with the SFIP's terms and conditions if she found additional flood damage not included in the adjuster's estimate or if the costs of repair exceeded the adjuster's estimate.  Hawk submitted such a request

- 12 -

on September 12, 2023, which included a signed amended proof of loss. From this, Hawk concludes that at the time of the 1.26.23 Letter there was no dispute between her and Hartford on the scope of the covered damages. "As a result, here, where the Defendant initially paid Plaintiffs $156,458.22 for covered damages, without knowledge of the sworn proof of loss and supplemental request for payment, there was no actionable dispute to bring, and any lawsuit by the Plaintiffs against the Defendant at the time would have been dismissed as premature." (Id. at 12-13.)

Hawk further argues that the Ian Memorandum's extension of time to file a proof of loss from 60 days to 365 days gave her until September 28, 2023, "to file any proof of loss disagreeing or contradicting the scope and value of the loss, creating an issue of dispute." (Id. at 13.) Hawk asserts that no dispute existed until September 12, 2023, when the supplemental request for damages (including the amended proof of loss) was submitted. (Id.) Hawk asserts that Hartford's 5.29.24 Letter was therefore the first time that Hartford refused to perform under the Policy, thereby giving rise to an actionable dispute. (Id.)

Hawk agrees that the "continued adjustment of a claim . . . after the carrier's initial determination does not re-start the one[-]year limitations period imposed by Federal law." (Doc. #24, p. 15) (emphasis added). See Wagner v. Dir., FEMA, 847 F.2d 515, 521 (9th Cir. 1988) (explaining that once the statute of

limitations is triggered, "reconsideration of that denial or responding to further inquiries about the case has no effect on the running of the limitations period.") She argues, however, that there was no initial determination until after her amended proof of loss was rejected, which makes the 5.29.24 Letter the first relevant denial for limitations purposes. (Doc. #24, p. 15.)

**B.**

Hawk's main premises – that she did not make a request under the Policy until she submitted the amended proof of loss on September 12, 2023, and that her claim was not partially disallowed until she received the 5.29.24 Letter – are refuted by the Complaint's allegations and the extrinsic documents that the Court may properly consider. The following facts are established:

- When Hawk's residence was damaged by flooding during Hurricane Ian on September 28, 2022, it was covered by the Policy.

- Within the time-period required by the Policy, Hawk submitted a claim for monetary damages to Hartford.

- Hartford exercised its option, as required by the Ian Memorandum, to accept an adjuster's estimate in lieu of requiring Hawk to file a proof of loss.

- An adjuster inspected Hawk's residence and prepared an estimate of damages being sought by Hawk as covered losses under the Policy. That estimate included money for damaged landscaping.

- The adjuster's estimate was forwarded to Hartford, which acted on it in making its coverage decisions.

- 14 -

- On January 26, 2023, Hartford denied coverage for landscaping and concluded that the amounts of the covered losses were only $156,458.22 and $50,000.00. On January 27, 2023, Hartford prepared and mailed two checks in those amounts to Hawk.

- The 1.26.23 Letter specifically stated that Hartford was denying part of Hawk's claim, and advised Hawk of her rights, including to file a federal lawsuit within a year of the partial disallowance.

- The 1.26.23 Letter also advised Hawk, consistent with the Ian Memorandum, that she could seek supplemental payments for up to a year after the loss.

- On September 25, 2023, Hawk submitted her first supplemental request, which included the amended proof of loss. It was denied in the 5.29.24 Letter.

Hawk made a request of Hartford under the Policy that was partially denied in the 1.26.23 Letter. She filed a written claim as the Policy required, and used the adjuster's estimate to obtain $206,458.22 from Hartford. Hartford's Letter referencing those payments informed Hawk that part of her claim had been denied. It clearly and unambiguously stated, "land is not covered . . . so your claim for payment to repair or replace your landscaping **is denied**," and informed Hawk of her right to administratively appeal or to sue "**within one year** of when [Hartford] **first denied** all **or part** of [her] claim." (Doc. #18-2, pp. 2, 4) (emphasis added).

This was clearly a partial denial of Hawk's claim. See McInnis v. Liberty Mut. Fire Ins. Co., No. 22-30022, 2022 WL 4594609, at *3 (5th Cir. Sept. 30, 2022) (deeming a claim denied when a letter stated that "content items that were not supported

by photographs were not able to be included in your claim," referred to that as a "decision to deny coverage," and informed claimant of her right to administratively appeal any portion of the denied claim); Lionheart Holding GRP v. Phila Contrib. Ship Ins. Co., 368 F. App'x 282, 283-85 (3d Cir. 2010) (deeming a claim denied when a letter stated that claimant's house was not covered and informed claimant of its one-year deadline to sue). Hawk's subsequent supplemental requests did not change the date of the first disallowance. McInnis, 2022 WL 4594609, at *2-3 (rejecting claimant's argument that the subsequent rejection of a proof of loss extended the statutory clock); Lionheart, 368 F. App'x at 284-85 (rejecting claimant's argument that a subsequent letter altered, varied, or waived the limitations period).

Hawk also asserts that the only two situations in which she could have instituted an action was upon the "disallowance by the Administrator of any such claim" or "the refusal of the claimant to accept the amount allowed upon any such claim." 42 U.S.C. § 4072. Hawk argues that neither situation was present following the 1.26.23 Letter. (Doc. #24, pp. 15-16.) Actually, both were present. As discussed earlier, the Complaint and other relevant documents clearly establish that there was a partial disallowance on January 26, 2023. And although Hawk accepted the checks, she refused to accept the amount that Hartford had deemed proper to resolve her claim. Therefore, a lawsuit filed immediately after

Hawk received the 1.26.23 Letter would not have been premature.

Hawk further asserts that her September 12, 2023, submission was not a request for Hartford to reconsider its prior position, but one for "additional indemnification and assistance not previously requested." (Id. at 17.)  It was therefore Hartford's 5.29.24 Letter in response to that request, Hawk argues, that triggered the one-year limitations period.  (Id.)

Hawk's statement about her September 12, 2023, submission is only partially correct, and even that part is not material.  Her submission was at least in part a request to reconsider Hartford's prior position.  She sought to recover $300,225.70 for damages to the dwelling, noting that Hartford had already paid $148,583.04 towards those damages.  (Doc. #24-4, p. 3.)  Referring to the September 21, 2023, submission, the Complaint states that Hawk's "expert found evidence that the flooding damaged the Residence in an amount and scope greater than what was found by Defendant's adjuster" and that "[n]umerous covered items were omitted and/or underpaid by Defendant." (Doc. #1, ¶¶ 20-21.)  The September 21, 2023, submission also sought additional money on items previously requested of Hartford, where Hawk disputed the amount disbursed.  "A policyholder has **only one** claim from a flood event regardless of the number of proofs of loss and amount of documentation the policyholder may submit in support of that claim." McInnis, 2022 WL 4594609, at *2 (some emphasis removed) (quoting FEMA, National

- 17 -

Flood Insurance Program Claims Manual at 68 (Oct. 2021)).

The Court concludes that the one-year limitations period was triggered by Hartford's partial denial of Hawk's claim in the 1.26.23 Letter, and that the limitations period was not waived, extended, or re-triggered by the subsequent, supplemental requests and the resulting denial letters.[6]  The present lawsuit, filed twenty months after the date of mailing of Hartford's first notice of partial disallowance of Hawk's claim, is barred by the statute of limitations.

### C.

Having decided that this lawsuit was untimely, the question still remains as to whether that untimeliness has jurisdictional implications.  Hartford argues that because it is a fiduciary and fiscal agent of FEMA, a federal agency, sovereign immunity applies, and so Hawk must comply with all pre-conditions to a waiver of sovereign immunity, including the limitations period.  Hawk's failure to do so, Hartford argues, means that her suit is barred by sovereign immunity principles, and hence the violation is jurisdictional in nature.  (Doc. #18, pp. 9–10 & n.33.)

A complaint alleging breach of an SFIP satisfies the

---

[6] Although some district courts have required a proof of loss to be filed before the denial of a claim can trigger the statute of limitations, W. End Harbor Condo. Ass'n, Inc. v. Wright Nat'l Flood Ins. Co., No. 5:20CV303-TKW-MJF, 2022 WL 18936050, at *4 & n.8 (N.D. Fla. July 18, 2022) (collecting cases), the Court does not find their reasoning persuasive.

jurisdictional requirements of 28 U.S.C. § 1331 by raising a
substantial federal question on its face. Newton v. Capital Assur.
Co., Inc., 245 F.3d 1306, 1309 (11th Cir. 2001). "But just because
a court can hear all cases involving federal questions does not
mean it can adjudicate all disputes. One limitation on a court's
ability to answer these questions is sovereign immunity." Walker
v. Sec'y of the Army, No. 23-14229, 2024 WL 4635382, at *2 (11th
Cir. Oct. 31, 2024). "Sovereign immunity is jurisdictional in
nature." FDIC v. Meyer, 510 U.S. 471, 475 (1994); Dupree v. Owens,
92 F.4th 999, 1005 (11th Cir. 2024) (same).

The Supreme Court has spent several decades categorizing
different types of time limits and their effect, or lack of effect,
on a federal court's jurisdiction. It "has identified three types
of time limits: (i) jurisdictional deadlines; (ii) mandatory
claim-processing rules; and (iii) time-related directives."
McIntosh v. United States, 601 U.S. 330, 337 (2024). Only the
first two types are asserted as options in this case.

The Supreme Court has categorized several limitations periods
and other filing deadlines as non-jurisdictional claim-processing
rules. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393
(1982) (filing a timely charge of discrimination with the EEOC);
Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 431 (2011)
(120-day deadline to file a notice of appeal); Sebelius v. Auburn
Reg'l Med. Ctr., 568 U.S. 145, 148–49 (2013) (180-day period to

file administrative appeal); United States v. Wong, 575 U.S. 402, 405 (2015) (2-year and 6-month FTCA filing deadlines); Musacchio v. United States, 577 U.S. 237, 246–48 (2016) (5-year limitation for criminal prosecutions); Hamer v. Neighborhood Hous. Servs. of Chicago, 583 U.S. 17, 27 (2017) (30-day limit on extensions to file notice of appeal); Boechler, P.C. v. Comm'r of Internal Revenue, 596 U.S. 199, 202 (2022) (30-day limit to file petition for review of administrative decision); Wilkins v. United States, 598 U.S. 152, 155–56 (2023) (12-year limit to sue the United States under the Quiet Title Act).

But because nothing is ever simple, the Supreme Court has also recognized the existence of some "special" statutes of limitations that are jurisdictional. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 132–139 (2008).

A court treats a statute of limitations as jurisdictional only if Congress has clearly stated so.  To determine whether Congress has made the requisite clear statement, a court examines the text, context, and relevant historical treatment of the provision.  Congress need not "incant magic words," but the traditional tools of statutory construction "must plainly show that Congress imbued a procedural bar with jurisdictional consequences."  Boechler, 596 U.S. at 203 (citations omitted).

Sovereign immunity must be considered in the litigation of WYO policies, because all "[c]laims are ultimately paid out of the

U.S. Treasury." <u>Gallup v. Omaha Prop. & Cas. Ins. Co.</u>, 434 F.3d 341, 342 (5th Cir. 2005); <u>see also</u> <u>Sandia Oil Co. v. Beckton</u>, 889 F.2d 258, 263-64 (10th Cir. 1989); <u>Newton</u>, 245 F.3d at 1312 ("preliminary responsibility is a mirage when the federal government . . . always foot[s] the full bill in the end"). At least one appellate court opinion could suggest that Section 4072's one-year filing requirement is a "condition on the [United States'] waiver of sovereign immunity." <u>EC Term of Years Trust v. United States</u>, 434 F.3d 807, 808 n.3 (5th Cir. 2006) (quoting <u>Block v. North Dakota</u>, 461 U.S. 273, 287 (1983)); <u>see also</u> <u>Newton</u>, 245 F.3d at 1309, 1312 (barring "prejudgment interest awards against WYO companies" under the "no-interest rule" of sovereign immunity).

But Congress has not clearly stated that Section 4072 is jurisdictional. Neither the text nor the context of the statute, or its relevant historical treatment, demonstrate an intent to imbue this procedural rule with jurisdictional consequences. The Supreme Court has more recently undermined the idea that an untimely lawsuit results in a loss of subject-matter jurisdiction, even where sovereign immunity is otherwise applicable: although "a condition to the waiver of sovereign immunity . . . must be strictly construed . . . time limits accompanying such waivers are [not] necessarily jurisdictional." <u>Wilkins</u>, 598 U.S. at 162 (citations and internal quotation marks omitted).

The Court thus concludes that Hawk's failure to show

compliance with Section 4072 does not divest the Court of subject-matter jurisdiction.  This portion of Hartford's motion to dismiss is therefore **DENIED**.

**D.**

Plaintiff requests an "opportunity to amend" her complaint. (Doc. #24, p. 18.)  Rule 15(a)(2) provides that courts should "freely give" parties leave to amend.  Fed. R. Civ. P. 15(a)(2). The Court cannot say at this point that amendment would necessarily be futile, so an opportunity to amend will be **GRANTED**.

Accordingly, it is now

**ORDERED**:

1. Defendant Hartford Insurance Company of the Midwest's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Doc. #18) is **GRANTED** on the Rule 12(b)(6) grounds and is otherwise **DENIED**.

2. The case is **DISMISSED WITHOUT PREJUDICE.**

3. Plaintiff Amy Hawk may file an amended complaint within twenty-one (21) days.

**DONE AND ORDERED** at Fort Myers, Florida, this   29th   day of January 2025.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record